# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

| | |
|---|---|
| Karol Huffman and Jessica Sims, | |
| *On behalf of themselves and those similarly situated,* | Case No. 4:19-cv-00034 |
| | Judge Louise Wood Flanagan |
| Plaintiff, | AMENDED COMPLAINT AND JURY TRIAL DEMAND |
| v. | |
| Team Carolinas, Inc. d/b/a Domino's and Osman Qasim, | |
| Defendants. | |

FIRST AMENDED CLASS AND COLLECTIVE ACTION COMPLAINT

1.     Karol Huffman and Jessica Sims, on behalf of themsleves and all similarly situated individuals, bring this action against Defendants Team Carolinas, Inc. and Osman Qasim ("Defendants"). Plaintiff seeks appropriate monetary, declaratory, and equitable relief based on Defendants' willful failure to compensate Plaintiff and similarly-situated individuals with minimum wages as required by the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, and the North Carolina Wage and Hour Act, N.C. Gen. Stat. 95-25.6, *et seq.*

2.     Defendants operate approximately 54 Domino's Pizza franchises in North Carolina and South Carolina (the "Team Carolinas Domino's" stores).

1

3.     Defendants repeatedly and willfully violated the Fair Labor Standards Act and North Carolina Wage and Hour Act by failing to adequately reimburse delivery drivers for their delivery-related expenses, thereby failing to pay delivery drivers the legally mandated minimum wage wages for all hours worked.

4.     Defendants maintain a policy and practice of underpaying their delivery drivers in violation of the FLSA, SCPWA, and NCWHA and failing to provide proper notice.

5.     All delivery drivers at the Team Carolinas Domino's stores, including Plaintiff, have been subject to the same or similar employment policies and practices, including policies and practices with respect to wages and reimbursement for out-of-pocket expenses.

6.     Plaintiff brings this action on behalf of herself and similarly situated current and former delivery drivers who elect to opt in pursuant to FLSA, 29 U.S.C. § 216(b) to remedy violations of the FLSA wage and hour provisions by Defendants.

7.     Plaintiff also brings this action on behalf of herself and similarly situated current and former delivery drivers in North Carolina, pursuant to Federal Rule of Civil Procedure 23, to remedy violations of N.C. Gen. Stat. 95-25.6 and N.C. Gen. Stat. 95-25.8, *et* seq.

8.     Plaintiff Sims also brings this action on behalf of herself and similarly situated current and former delivery drivers in South Carolina, pursuant to Federal Rule of Civil Procedure 23, to remedy violations of South Carolina Payment of Wages Act, S.C. Code Ann. § 41-10-10, *et seq.*

## Jurisdiction and Venue

9.     Under 28 U.S.C. § 1331 and 29 U.S.C. § 216(b), this Court has jurisdiction over Plaintiff's FLSA claims.

10.     Under 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Plaintiff's North Carolina law claims.

11.     Venue in this Court is proper under 28 U.S.C. § 1391(b) because Plaintiff resides in this district, and a substantial part of the events giving rise to the claim herein occurred in this district.

**Parties**

<u>**Plaintiff**</u>

**Karol Huffman**

12.     Plaintiff Karol Huffman is a resident of Kinston, North Carolina and, at all times material herein, Plaintiff worked within the boundaries of the Eastern District of North Carolina.

13.     Plaintiff was an "employee" of all of the Defendants as defined in the FLSA and the North Carolina Wage and Hour Act, N.C. Gen. Stat. §95-25.2.

14.     Plaintiff has given written consent to join this action.

**Jessica Sims**

15.     Plaintiff Jessica Sims is a resident of Spartanburg, S.C.

16.     Plaintiff was an "employee" of all of the Defendants as defined in the FLSA and the South Carolina Payment of Wages Act.

17.     Plaintiff has given written consent to join this action.

<u>**Defendants**</u>

**Team Carolinas Domino's, Inc.**

18.     Defendant Team Carolinas, Inc. is a domestic corporation authorized to do business under the laws of North Carolina.

3

19.     Team Carolinas, Inc. is the corporate entity that appears on Plaintiff's paystubs for the work she completed for Defendants.

20.     Team Carolinas, Inc. was founded by Osman Qasim.

21.     Team Carolinas, Inc. operates the Team Carolinas Domino's stores.

22.     Team Carolinas, Inc. is headquartered in 102 South Link Ave., Salisbury, NC 28144.

23.     Team Carolinas, Inc. has substantial control over Plaintiff and similarly situated employees' working conditions, and over the unlawful policies and practices alleged herein.

24.     Team Carolinas, Inc. has direct or indirect control of the terms and conditions of Plaintiff's work and the work of similarly situated employees.

25.     At all relevant times, Team Carolinas, Inc. maintained control, oversight, and direction over Plaintiff and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, reimbursements, pay rates, deductions, and other practices.

26.     Team Carolinas, Inc. is an "employer" of Plaintiff and similarly situated employees as that term is defined by the FLSA and N.C. Gen. Stat. §95-25.2.

27.     At all relevant times, Team Carolinas, Inc. has been and continues to be an enterprise engaged in "the production of goods for commerce" within the meaning of the phrase as used in the FLSA.

28.     Team Carolinas, Inc.'s gross revenue exceeds $500,000 per year.

**Osman Qasim**

4

29.     Defendant Osman Qasim is an owner and operator of Team Carolinas, Inc. and the Team Carolinas Domino's stores.

30.     Osman Qasim founded Team Carolinas Domino's.

31.     Osman Qasim is the president of Team Carolinas Domino's.

32.     Osman Qasim is individually liable to Team Carolinas Domino's delivery drivers under the definitions of "employer" set forth in the FLSA and N.C. Gen. Sta. 95-25.2 because he owns and operates the Team Carolina Domino's stores, serves as a manager and/or member of Team Carolinas, Inc., ultimately controls significant aspects of Team Carolinas Domino's day-to-day functions, and ultimately controls compensation and reimbursement of employees.  29 U.S.C. § 203(d).

33.     At all relevant times, by virtue of his role as owner and operator of Team Carolinas, Inc., Osman Qasim has had financial control over the operations at each of the Team Carolinas Domino's stores.

34.     At all relevant times, by virtue of his role as owner and operator of Team Carolinas, Inc., Osman Qasim has a role in significant aspects of the Team Carolinas Domino's stores' day to day operations.

35.     At all relevant times, by virtue of his role as owner and operator of Team Carolinas, Inc., Osman Qasim has had control over the Team Carolinas Domino's stores' pay policies.

36.     At all relevant times, by virtue of his role as owner and operator of Team Carolinas, Inc., Osman Qasim has had power over personnel and payroll decisions at the Team Carolinas Domino's, stores, including but not limited to influence of delivery driver pay.

5

37.     At all relevant times, by virtue of his role as owner and operator of Team Carolinas, Inc., Osman Qasim has had the power to hire, fire, and discipline employees, including delivery drivers at the Team Carolinas Domino's stores.

38.     At all relevant times, by virtue of his role as owner and operator of Team Carolinas, Inc., Osman Qasim has had the power to stop any illegal pay practices that harmed delivery drivers at the Team Carolinas Domino's stores.

39.     At all relevant times, by virtue of his role as owner and operator of Team Carolinas, Inc., Osman Qasim has had the power to transfer the assets and liabilities of Team Carolinas Domino's.

40.     At all relevant times, by virtue of his role as owner and operator of Team Carolinas, Inc., Osman Qasim has had the power to declare bankruptcy on behalf of Team Carolinas Domino's.

41.      At all relevant times, by virtue of his role as owner and operator of Team Carolinas, Inc., Osman Qasim has had the power to enter into contracts on behalf of each of the Team Carolinas Domino's stores.

42.     At all relevant times, by virtue of his role as owner and operator of Team Carolinas, Inc., Osman Qasim has had the power to close, shut down, and/or sell each of the Team Carolinas Domino's stores.

43.     At all relevant times, by virtue of his role as owner and operator of Team Carolinas, Inc., Osman Qasim had authority over the overall direction of each of Team Carolinas Domino's stores and was ultimately responsible for their operations.

44.     The Team Carolinas Domino's stores function for Osman Qasim's profit.

45.     Osman Qasim has influence over how the Team Carolinas Domino's stores can run more profitably and efficiently.

## Facts

### Class-wide Factual Allegations

46.     During the relevant time period, Defendants have operated approximately 54 Team Carolinas Domino's stores.

47.     The primary function of the Team Carolinas Domino's stores is to sell pizza and other food items to customers, whether they carry out or have their food delivered.

48.     Some or all of the Team Carolinas Domino's stores employ delivery drivers.

49.     Plaintiff and the similarly situated persons Plaintiff seeks to represent are current and former delivery drivers employed by Defendants at the Team Carolinas Domino's stores.

50.     All delivery drivers employed at the Team Carolinas Domino's stores over the last three years have had essentially the same job duties—deliver pizza and other food items to customers.

51.     When there are no deliveries to make, Defendants' delivery drivers are required to work inside the Team Carolinas Domino's stores building pizza boxes, cleaning, preparing pizza and other food items, and completing other duties inside the restaurant as necessary.

52.     At all relevant times, Plaintiff and similarly situated delivery drivers have been paid minimum wage or minimum wage minus a tip credit for the hours they worked while completing deliveries.

53.     At all relevant times, Plaintiff and similarly situated delivery drivers have been paid minimum wage or slightly above minimum wage for the hours they worked inside the restaurant.

54.     When Defendants reduced the on-the-road payrate of Plaintiffs and similarly situated delivery drivers from full minimum wage to $4.25-$4.50 per hour, they did not notify the delivery drivers of the change, nor did they inform the delivery drivers of the requirements for taking a tip credit under the FLSA.

55.     Defendants require delivery drivers to maintain and pay for operable, safe, and legally compliant automobiles to use in delivering Defendants' pizza and other food items.

56.     By requiring delivery drivers to provide their own vehicles, Defendants are able to avoid directly incurring automobile expenses, including but not limited to automobile costs and depreciation, gasoline expenses, automobile maintenance and parts, insurance, registrations, licensing, interest, equipment, and other expenses necessary for Defendants to operate their business.

57.     Defendants require delivery drivers to incur and/or pay job-related expenses, including but not limited to automobile costs and depreciation, gasoline expenses, automobile maintenance and parts, insurance, financing charges, cell phone costs, GPS charges, and other equipment necessary for delivery drivers to complete their job duties.

58.     Pursuant to such requirements, Plaintiff and other similarly situated employees purchase gasoline, vehicle parts and fluids, automobile repair and maintenance services, automobile insurance, suffered automobile depreciation and damage, financing charges, and incur cell phone and data charges all for the primary benefit of Defendants.

8

59.     Some or all of the Team Carolinas Domino's stores do not track, maintain records of, and reimburse each delivery driver for his or her actual expenses.

60.     Some or all of the Team Carolinas Domino's stores do not reimburse delivery drivers at the IRS standard business mileage rate for each mile driven for the Team Carolinas Domino's stores' benefit.

61.     Some or all of the Team Carolinas Domino's stores do not reimburse delivery drivers at a reasonable approximation of the delivery drivers' expenses.

62.     Plaintiff Huffman and similarly situated delivery drivers receive a per-mile reimbursement payment that is less than the IRS standard business mileage rate for each mile they drive while completing deliveries for Team Carolinas Domino's.

63.     For example, Plaintiff Huffman receives $.28 per delivery for every mile she drives while making deliveries.

64.     Plaintiff Sims and similarly situated delivery drivers in South Carolina receive a flat-rate per delivery reimbursement payment that is less than the IRS standard business mileage rate for each mile they drive while completing deliveries for Team Carolinas Domino's.

65.     For example, Plaintiff Sims received $1.00 in automobile expenses reimbursement for each delivery that she completed for Defendants.

66.     According to the Internal Revenue Service, the standard mileage rate for the use of a car during the relevant time periods have been:

        a.     2016: 54 cents/mile
        b.     2017: 53.5 cents/mile
        c.     2018: 54.5 cents/mile
        d.     2019: 58 cents/mile

67.     The delivery drivers at Team Carolinas Domino's have incurred even more in expenses than those contemplated by the IRS standard business mileage rate—*e.g.*, cell phone and data charges.

68.     As a result of the automobile and other job-related expenses incurred by Plaintiff and other similarly situated delivery drivers, they were deprived of minimum wages guaranteed to them by the FLSA, SCWPA, and NCWHA.

69.     At all relevant times, Defendants have applied the same pay policies, practices, and procedures to all delivery drivers at the Team Carolinas Domino's stores.

70.     All of Defendants' delivery drivers had similar experiences to that of Plaintiff. They completed similar job duties, were subject to the same reimbursement policy; received similar reimbursement payments; incurred similar automobile expenses; completed deliveries of similar distances and at similar frequencies; and were paid at or near the applicable minimum wage rate or a tipped wage rate before deducting unreimbursed vehicle costs.

71.     Regardless of the precise amount of the reimbursement formula at any given point in time, Defendants' reimbursement formula has resulted in an unreasonable underestimation of delivery drivers' automobile expenses throughout the recovery period, causing systematic violations of the minimum wage laws.

72.     Because Defendants paid their drivers a gross hourly wage at precisely, or at least very close to, the applicable minimum wage, and because the delivery drivers incurred unreimbursed automobile expenses, the delivery drivers "kicked back" to Defendants an amount sufficient to cause minimum wage violations. *See* 29 C.F.R. § 531.35.

73.     Defendants are relying on the same flawed policy and methodology with respect to all delivery drivers at all of the Team Carolinas Domino's stores.

74.     Defendants have failed to properly take a tip credit from Plaintiff's wages and the wages of other similarly situated delivery drivers because Defendants did not inform the drivers of the requirements for taking a tip credit. 29 U.S.C. § 203(m); 29 C.F.R. § 531.59(b).

75.     When they began taking a tip credit from drivers' wages, Defendants failed to inform the drivers of the cash wage they would ostensibly receive pursuant to the tip credit.

76.     When they began taking a tip credit from drivers' wages, Defendants failed to inform the drivers of the additional amount by which the wages of the tipped employee are increased on account of the tip credit claimed by the employer, which amount may not exceed the value of the tips actually received by the employee.

77.     When they began taking a tip credit from drivers' wages, Defendants failed to inform the drivers that all tips received by the tipped employee must be retained by the employee except for a valid tip pooling arrangement limited to employees who customarily and regularly receive tips.

78.     When they began taking a tip credit from drivers' wages, Defendants failed to inform the drivers that the tip credit shall not apply to any employee who has not been informed of the tip credit requirements stated in 29 C.F.R. § 531.59(b).

79.     Defendants have failed to properly take a tip credit from Plaintiff's wages and the wages of similarly situated employees because, after accounting for unreimbursed expenses, Defendants have paid delivery drivers a lower wage rate than they informed the delivery drivers they would be paid.

80.     Defendants have willfully failed to pay federal, South Carolina, and North Carolina state minimum wage to Plaintiff and similarly situated delivery drivers at the Team Carolinas Domino's stores.

## Plaintiff Huffman's Individual Factual Allegations

81.     Plaintiff Huffman worked at Team Carolinas Domino's from August 2018 to present at the Kinston, North Carolina location.

82.     Plaintiff Huffman was subject to the same or substantially similar compensation terms as other drivers for the Team Carolinas Domino's stores.

83.     Plaintiff Huffman was originally paid minimum wage inside and outside the store of $7.25 per hour.

84.     In September 2018, Defendants unilaterally reduced her outside rate from $7.25 per hour to  $4.50 per hour while making deliveries.

85.     When Defendants began taking a tip credit from Plaintiff Huffman's wages, they did not properly inform her of the requirements for taking a tip credit.

86.     When they began taking a tip credit from Plaintiff Huffman's wages, Defendants failed to inform Plaintiff of the cash wage she would ostensibly receive pursuant to the tip credit.

87.     When they began taking a tip credit from Plaintiff Huffman's wages, Defendants failed to inform Plaintiff of the additional amount by which the wages of the tipped employee are increased on account of the tip credit claimed by the employer, which amount may not exceed the value of the tips actually received by the employee.

88.     When they began taking a tip credit from Plaintiff Huffman's wages, Defendants failed to inform Plaintiff that all tips received by the tipped employee must be retained by the

12

employee except for a valid tip pooling arrangement limited to employees who customarily and regularly receive tips.

89.     When they began taking a tip credit from Plaintiff Huffman's wages, Defendants failed to inform Plaintiff that the tip credit shall not apply to any employee who has not been informed of the tip credit requirements stated in 29 C.F.R. § 531.59(b).

90.     Alternatively, Defendants have failed to properly take a tip credit from Plaintiff Huffman's wages because, after accounting for unreimbursed expenses, Defendants have taken more of a tip credit than they informed Plaintiff they would be taking.

91.     After her pay was reduced, Plaintiff Huffman was paid minimum wage minus a tip credit as an hourly rate for all hours worked while delivering food.

92.     Plaintiff Huffman was paid minimum wage minimum wage for all hours worked inside the restaurant.

93.     Plaintiff Huffman was reimbursed on a per mile basis when completing deliveries for Defendants.

94.     Plaintiff Huffman was reimbursed $.28 per mile.

95.     Plaintiff Huffman was required to maintain and pay for operable, safe, and legally compliant automobiles to use in delivering Defendants' pizza and other food items.

96.     Plaintiff Huffman was required to incur and/or pay job-related expenses, including but not limited to automobile costs and depreciation, gasoline expenses, automobile maintenance and parts, insurance, cell phone service, GPS service, automobile financing, and other equipment necessary for delivery drivers to complete their job duties.

13

97.     Plaintiff Huffman has purchased gasoline, vehicle parts and fluids, automobile repair and maintenance services, automobile insurance, suffered automobile depreciation and damage, automobile financing, and incur cell phone and data charges all for the primary benefit of Defendants.

98.     Defendants did not track the actual expenses incurred by Plaintiff Huffman.

99.     Defendants did not reimburse Plaintiff Huffman based on her actual delivery-related expenses.

100.     Plaintiff Huffman was not reimbursed at the IRS standard mileage rate for the miles she drove while completing deliveries.

101.     Defendants did not reasonably approximate the expenses incurred by Plaintiff Huffman while she completed deliveries for Defendants.

102.     During Plaintiff Huffman's employment with Defendants, Defendants failed to adequately reimburse Plaintiff for automobile and other job-related expenses.

103.     Plaintiff Huffman regularly made approximately 2 to 4 deliveries per hour during the hours she worked as a delivery driver.

104.     Plaintiff Huffman regularly drove approximately 6-12 miles per delivery.

105.     In 2018, for example, the IRS business mileage reimbursement has been $.545 per mile, which reasonably approximated the automobile expenses incurred delivering pizzas. http://www.irs.gov/Tax-Professionals/Standard-Mileage-Rates.     Defendants     reimbursed Plaintiff $.28 per mile. Thus in 2018, Defendants' policy under-reimbursed Plaintiff by $.265 per mile ($.545-$.28). Considering Plaintiff's estimate of about 9 average miles per delivery, Defendants under-reimbursed her by about $2.39 per delivery. Considering Plaintiff's estimate

14

of approximately 3 deliveries per hour, Defendants under-reimbursed Plaintiff by about $7.17 per hour.

106. As a result of unreimbursed automobile expenses and other job-related expenses, Defendants have failed to pay Plaintiff Huffman minimum wage as required by law.

### Plaintiff Sims' Individual Factual Allegations

107. Plaintiff Sims worked at Team Carolinas Domino's from last 2017 to August 2018 at the Spartanburg, South Carolina location.

108. Plaintiff Sims was subject to the same or substantially similar compensation terms as other drivers for the Team Carolinas Domino's stores.

109. Plaintiff Sims was paid minimum wage for all hours worked inside the restaurant.

110. Plaintiff Sims was paid $4.50 per hour while making deliveries.

111. When Defendants took a tip credit from Plaintiff Sims' wages, they did not properly inform her of the requirements for taking a tip credit.

112. When they took a tip credit from Plaintiff Sims' wages, Defendants failed to inform Plaintiff of the cash wage she would ostensibly receive pursuant to the tip credit.

113. When they took a tip credit from Plaintiff Sims' wages, Defendants failed to inform Plaintiff of the additional amount by which the wages of the tipped employee are increased on account of the tip credit claimed by the employer, which amount may not exceed the value of the tips actually received by the employee.

114. When they took a tip credit from Plaintiff Sims' wages, Defendants failed to inform Plaintiff that all tips received by the tipped employee must be retained by the employee

15

except for a valid tip pooling arrangement limited to employees who customarily and regularly receive tips.

115. When they took a tip credit from Plaintiff Sims' wages, Defendants failed to inform Plaintiff that the tip credit shall not apply to any employee who has not been informed of the tip credit requirements stated in 29 C.F.R. § 531.59(b).

116. Alternatively, Defendants have failed to properly take a tip credit from Plaintiff Sims' wages because, after accounting for unreimbursed expenses, Defendants have taken more of a tip credit than they informed Plaintiff they would be taking.

117. Plaintiff Sims was reimbursed on a flat-rate per delivery basis when completing deliveries for Defendants.

118. Plaintiff Sims was reimbursed $1.00 per delivery. She estimates that the average delivery was six miles round trip.

119. Plaintiff Sims was reimbursed approximately $.17 per mile ($1.00 per delivery / 6 miles).

120. Plaintiff Sims was required to maintain and pay for operable, safe, and legally compliant automobiles to use in delivering Defendants' pizza and other food items.

121. Plaintiff Sims was required to incur and/or pay job-related expenses, including but not limited to automobile costs and depreciation, gasoline expenses, automobile maintenance and parts, insurance, cell phone service, GPS service, automobile financing, and other equipment necessary for delivery drivers to complete their job duties.

122. Plaintiff Sims has purchased gasoline, vehicle parts and fluids, automobile repair and maintenance services, automobile insurance, suffered automobile depreciation and damage,

16

automobile financing, and incurred cell phone and data charges all for the primary benefit of Defendants.

123.    Defendants did not track the actual expenses incurred by Plaintiff Sims.

124.    Defendants did not reimburse Plaintiff Sims based on her actual delivery-related expenses.

125.    Plaintiff Sims was not reimbursed at the IRS standard mileage rate for the miles she drove while completing deliveries.

126.    Defendants did not reasonably approximate the expenses incurred by Plaintiff Sims while she completed deliveries for Defendants.

127.    During Plaintiff Sims' employment with Defendants, Defendants failed to adequately reimburse Plaintiff for automobile and other job-related expenses.

128.    Plaintiff Sims regularly made approximately 2 to 4 deliveries per hour during the hours she worked as a delivery driver.

129.    In 2018, for example, the IRS business mileage reimbursement was $.545 per mile, which reasonably approximated the automobile expenses incurred delivering pizzas. http://www.irs.gov/Tax-Professionals/Standard-Mileage-Rates.    Defendants    reimbursed Plaintiff Sims approximately $.17 per mile ($1.00 per delivery / 6 miles). Thus in 2018, Defendants' policy under-reimbursed Plaintiff Sims by $.375 per mile ($.545-$.17). Considering Plaintiff's estimate of about 6 average miles per delivery, Defendants under-reimbursed her by about $2.25 per delivery. Considering Plaintiff Sims' estimate of approximately 3 deliveries per hour, Defendants under-reimbursed Plaintiff by about $6.75 per hour.

17

130.     As a result of unreimbursed automobile expenses and other job-related expenses, Defendants have failed to pay Plaintiff Sims minimum wage as required by law.

## Collective Action Allegations

131.     Plaintiffs bring the First Count on behalf of themselves and all similarly situated current and former delivery drivers employed at the Team Carolinas Domino's stores owned, operated, and controlled by Defendants nationwide, during the three years prior to the filing of this Class Action Complaint and the date of final judgment in this matter, who elect to opt-in to this action (the "FLSA Collective").

132.     At all relevant times, Plaintiffs and the FLSA Collective have been similarly situated, have had substantially similar job duties, requirements, and pay provisions, and have all been subject to Defendants' decision, policy, plan, practices, procedures, protocols, and rules of willfully refusing to pay Plaintiffs and the FLSA Collective minimum wage for all hours worked and failing to reimburse delivery drivers for automobile expenses and other job-related expenses. Plaintiffs' claims are essentially the same as those of the FLSA Collective.

133.     Defendants' unlawful conduct is pursuant to a corporate policy or practice.

134.     Defendants are aware or should have been aware that federal law required them to pay employees minimum wage for all hours worked and to fully reimburse for "tools of the trade."

135.     Defendants are aware or should have been aware that federal law required them to provide detailed notice of the tip credit provisions of the FLSA before they were permitted to claim a tip credit to count against their minimum wage obligation.

136.     Defendants' unlawful conduct has been widespread, repeated, and consistent.

18

137.    The First Count are properly brought under and maintained as an opt-in collective action under 29 U.S.C. § 216(b).

138.    The FLSA Collective members are readily identifiable and ascertainable.

139.    In recognition of the services Plaintiffs have rendered and will continue to render to the FLSA Collective, Plaintiffs will request payment of service awards upon resolution of this action.

### Rule Class Action Allegations under North Carolina Law

140.    Plaintiff brings the Second, Third, and Fifth Counts under Federal Rule of Civil Procedure 23, on behalf of herself and a class of persons consisting of:

> All current and former delivery drivers employed by Defendants in the State of North Carolina since the date 3 years preceding the filing of Plaintiffs' original Complaint ("Rule 23 Class").

141.    The North Carolina claims, if certified for class-wide treatment, are brought on behalf of all similarly situated persons who do not opt-out of the Rule 23 Class.

142.    The North Carolina claims satisfy the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of a class action pursuant to Fed. R. Civ. P. 23.

143.    Questions of fact and law common to the Rule 23 class predominate over any questions affecting only individual members. The questions of law and fact common to the Rule 23 Class arising from Defendants' actions include, without limitation:

> a.  Whether Plaintiff Huffman and the members of the Rule 23 Class all drive their personal cars to complete deliveries for Defendants;
>
> b.  Whether Plaintiff Huffman and the members of the Rule 23 Class are required to pay for job-related expenses, including but not limited to automobile costs and depreciation, gasoline expenses, automobile maintenance and parts, insurance,

19

financing charges, cell phone costs, GPS charges, and other equipment necessary for delivery drivers to complete their job duties;

c. Whether Defendants failed to pay minimum wages to members of the Rule 23 Class as required by the NCHWA;

d. Whether Defendants failed to pay the Rule 23 Class all wages earned by them and promised to them in violation of the NCWHA;

e. Whether Defendants reimbursed the Rule 23 Class for their actual expenses;

f. Whether Defendants reimbursed the Rule 23 Class at the IRS standard business mileage rate;

g. Whether Defendants reasonably approximated the expenses incurred by Plaintiff Huffman and the Rule 23 Class while they were completing deliveries;

h. Whether Defendants' formula and/or methodology used to calculate payment of reimbursement for vehicle expenses resulted in unreasonable under-reimbursement of the members of the Rule 23 Class;

i. Whether Defendants illegally withheld portions of Plaintiff Huffman's wages by failing to properly reimburse for delivery-related expenses;

j. Whether Defendants were unjustly enriched by Plaintiff Huffman and the Rule 23 Class by having to provide and use their own vehicles for Defendants' benefit;

k. Whether Defendants illegally withheld portions of Plaintiff Huffman's wages by failing to properly reimburse for delivery-related expenses; and

l. The nature and extent of class-wide injury and the measure of damages for those injuries.

144. The questions set forth above predominate over any questions affecting only individual persons, and a class action is superior with respect to considerations of consistency, economy, efficiency, fairness, and equity to other available methods for the fair and efficient adjudication of state law claims.

145. A class action is the appropriate method for the fair and efficient adjudication of this controversy. Defendants have acted or refused to act on grounds generally applicable to the Rule 23 Class.

146. Plaintiff Huffman is an adequate representative of the Rule 23 Class because she is a member of the Rule 23 Class and her interests do not conflict with the interests of the members of the Rule 23 Class that she seeks to represent. The interests of the members of the Rule 23 Class will be fairly and adequately protected by Plaintiff Huffman and the undersigned counsel, who have extensive experience prosecuting complex wage and hour, employment, and class action litigation.

147. Maintenance of this action as a class action is superior to other available methods for fairly and efficiently adjudicating the controversy as members of the Rule 23 Class have little interest in individually controlling the prosecution of separate class actions, no other litigation is pending over the same controversy, it is desirable to concentrate the litigation in this court due to the relatively small recoveries per member of the Rule 23 Class, and there are no material difficulties impairing the management of a class action.

148. It would be impracticable and undesirable for each member of the Rule 23 Class who suffered harm to bring a separate action. In addition, the maintenance of separate actions would place a substantial and unnecessary burden on the courts and could result in inconsistent adjudications, while a single class action can determine, with judicial economy, the rights of all Rule 23 Class members.

149. The number and identity of the Rule 23 Class members are ascertainable from Defendants' records.

150.     The hours assigned and worked, the positions held, deliveries completed, and the rates of pay and reimbursements paid for each Rule 23 Class Member are determinable from Defendants' records.

151.     Notice can be provided by means permissible under Rule 23.

152.     The Rule 23 Class member are so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court.

153.     There are more than 50 Rule 23 Class members.

154.     Plaintiff Huffman's claims are typical of those claims which could be alleged by any Rule 23 Class member, and the relief sought is typical of the relief which would be sought by each Rule 23 Class member in separate actions.

155.     Plaintiff Huffman and the Rule 23 Class members have all sustained similar types of damages as a result of Defendants' failure to comply with

156.     In recognition of the services Plaintiff Huffman has rendered and will continue to render to the Rule 23 Class, Plaintiff will request payment of a service award upon resolution of this action.

**Rule 23 Class Allegations under South Carolina State Law**

157.     Plaintiff Sims brings the Fourth and Sixth Counts under Federal Rule of Civil Procedure 23, on behalf of herself and a class of persons consisting of:

> All current and former delivery drivers employed by Defendants in the State of South Carolina since the date 3 years preceding the filing of Plaintiffs' Amended Complaint ("South Carolina Rule 23 Class").

158.     The South Carolina claims, if certified for class-wide treatment, are brought on behalf of all similarly situated persons who do not opt-out of the Rule 23 Class.

159.    The South Carolina claims satisfy the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of a class action pursuant to Fed. R. Civ. P. 23.

160.    Questions of fact and law common to the Rule 23 class predominate over any questions affecting only individual members. The questions of law and fact common to the Rule 23 Class arising from Defendants' actions include, without limitation:

a.  Whether Plaintiff Sims and the members of the Rule 23 Class all drive their personal cars to complete deliveries for Defendants.

b.  Whether Plaintiff Sims and the members of the Rule 23 Class are required to pay for job-related expenses, including but not limited to automobile costs and depreciation, gasoline expenses, automobile maintenance and parts, insurance, financing charges, cell phone costs, GPS charges, and other equipment necessary for delivery drivers to complete their job duties.

c.  Whether Defendants failed to pay minimum wages to members of the Rule 23 Class as required by the SCPWA.

d.  Whether Defendants failed to pay the Rule 23 Class all wages earned by them and promised to them in violation of the SCPWA.

e.  Whether Defendants reimbursed the Rule 23 Class for their actual expenses.

f.  Whether Defendants reimbursed the Rule 23 Class at the IRS standard business mileage rate.

g.  Whether Defendants reasonably approximated the expenses incurred by Plaintiff Sims and the Rule 23 Class while they were completing deliveries.

h.  Whether Defendants' formula and/or methodology used to calculate payment of reimbursement for vehicle expenses resulted in unreasonable under-reimbursement of the members of the Rule 23 Class.

i.  Whether Defendants paid the Rule 23 Class exactly, or very close to, South Carolina's minimum wage for time spent performing those duties.

j.  Whether Defendants took deductions from wages of Plaintiff Sims and the Rule 23 Class.

k. Whether Defendants provided proper notice of the deductions they took from the wages of Plaintiff Sims and the Rule 23 Class.

l. Whether Plaintiff Sims and the Rule 23 Class were paid all wages due to them on their scheduled payday.

m. Whether Defendants' policy of failing to pay Plaintiff Sims and the Rule 23 Class was instituted willfully or with reckless disregard of the law.

n. Whether Defendants were unjustly enriched by Plaintiff Sims and the Rule 23 Class having provided and used their own vehicles for Defendants' benefit.

o. The nature and extent of class-wide injury and the measure of damages for those injuries.

161. The questions set forth above predominate over any questions affecting only individual persons, and a class action is superior with respect to considerations of consistency, economy, efficiency, fairness, and equity to other available methods for the fair and efficient adjudication of state law claims.

162. A class action is the appropriate method for the fair and efficient adjudication of this controversy. Defendants have acted or refused to act on grounds generally applicable to the Rule 23 Class.

163. Plaintiff Sims is an adequate representative of the Rule 23 Class because she is a member of the Rule 23 Class and her interests do not conflict with the interests of the members of the Rule 23 Class that she seeks to represent. The interests of the members of the Rule 23 Class will be fairly and adequately protected by Plaintiff Sims and the undersigned counsel, who have extensive experience prosecuting complex wage and hour, employment, and class action litigation.

24

164.    Maintenance of this action as a class action is superior to other available methods for fairly and efficiently adjudicating the controversy as members of the Rule 23 Class have little interest in individually controlling the prosecution of separate class actions, no other litigation is pending over the same controversy, it is desirable to concentrate the litigation in this court due to the relatively small recoveries per member of the Rule 23 Class, and there are no material difficulties impairing the management of a class action.

165.    It would be impracticable and undesirable for each member of the Rule 23 Class who suffered harm to bring a separate action. In addition, the maintenance of separate actions would place a substantial and unnecessary burden on the courts and could result in inconsistent adjudications, while a single class action can determine, with judicial economy, the rights of all Rule 23 Class members.

166.    The number and identity of the Rule 23 Class members are ascertainable from Defendants' records.

167.    The hours assigned and worked, the positions held, deliveries completed, and the rates of pay and reimbursements paid for each Rule 23 Class Member are determinable from Defendants' records.

168.    Notice can be provided by means permissible under Rule 23.

169.    The Rule 23 Class member are so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court.

170.    There are more than 50 Rule 23 Class members.

171.    Plaintiff Sims' claims are typical of those claims which could be alleged by any Rule 23 Class member, and the relief sought is typical of the relief which would be sought by each Rule 23 Class member in separate actions.

172.    Plaintiff Sims and the Rule 23 Class members have all sustained similar types of damages as a result of Defendants' failure to comply with

173.    In recognition of the services Plaintiff Sims has rendered and will continue to render to the Rule 23 Class, Plaintiff Sims will request payment of a service award upon resolution of this action.

## Causes of Action

### Count 1
### Failure to Pay Minimum Wages - Fair Labor Standards Act
### (On Behalf of Plaintiffs and the FLSA Collective)

174.    Plaintiffs restate and incorporate the foregoing allegations as if fully rewritten herein.

175.    Plaintiffs and the FLSA Collective are or were non-exempt, hourly employees entitled to receive no less than minimum wage for all hours worked.

176.    Defendants failed to properly claim a tip credit from the wages of Plaintiffs and the FLSA collective because Plaintiffs and the FLSA collective were paid a wage rate lower than Defendants informed them that they would be paid.

177.    Defendants paid Plaintiffs and the FLSA Collective at or close to minimum wage for all hours worked.

178.    Defendants required and continue to require Plaintiffs and the FLSA Collective to pay for automobile expenses and other job-related expenses out of pocket, and failed to properly reimburse Plaintiffs and the FLSA Collective for said expenses.

179.    By the acts and conduct described above, Defendants willfully violated the provisions of the FLSA and disregarded the rights of Plaintiffs and the FLSA Collective.

180.    Plaintiffs and the FLSA Collective have been damaged by Defendants' willful failure to pay minimum wage as required by law.

181.    As a result of Defendants' willful violations, Plaintiffs and the FLSA Collective are entitled to damages, including, but not limited to, unpaid wages, unreimbursed expenses, liquidated damages, costs, and attorneys' fees.

### Count 2
### Failure to Pay Minimum Wages – N.C. Gen. Stat. 95-25.6
### (On Behalf of Plaintiff Huffman and the Rule 23 Class)

182.    Plaintiff Huffman restates and incorporates the foregoing allegations as if fully rewritten herein.

183.    The North Carolina Wage and Hour Act states that every employer shall pay every employee all wages and tips accruing to the employee on the regular payday. *See* N.C. Gen. Stat. 95-25.6.

184.    By their policy of failing to fully reimburse for their delivery-related expenses, which constitute *de facto* deductions from pay, by failing to properly claim a tip credit from the wages of the Rule 23 class, and by failing to otherwise pay the wages due to Plaintiff Huffman and the Rule 23 Class under N.C. Gen. Stat. 95-25.6, Defendants have failed to pay all wages and tips due to their delivery drivers by their regular payday.

27

185.     Defendants did not act in good faith when they violated the North Carolina Wage and Hour Act.

186.     Plaintiff Huffman and the Rule 23 Class are entitled to their unpaid wages and unlawful deductions, liquidated damages in an amount equal to their unpaid wages and unlawful deductions, and interest for the two years preceding the filing of the complaint in this matter.

187.     Plaintiff Huffman and the Rule 23 Class are further entitled to recover attorneys' fees and costs.

188.     As a result of Defendants' willful violations, Plaintiff Huffman and the Rule 23 Class are entitled to damages, including, but not limited to, unpaid wages, unreimbursed expenses, liquidated damages, costs, and attorneys' fees.

**Count 3**
**Withholding of Wages – N.C. Gen. Stat. §95-25.8**
**(On Behalf of Plaintiff and the Rule 23 Class)**

189.     Plaintiff Huffman restates and incorporates the foregoing allegations as if fully rewritten herein.

190.     The North Carolina Wage and Hour Act states than an employer is permitted to withhold a portion of an employee's wages provided that the employer has written authorization from the employee which is signed on or before the payday for the pay periods for which the deduction is made; indicated the reason for the deduction; and states the actual dollar amount of wages which shall be deducted from one or more paychecks. *See* N.C. Gen. Stat. 95-25.8(a)(2).

191.     Defendants have not obtained written authorization from the Plaintiff Huffman or the Rule 23 Class to withhold a portion of their wages to cover their delivery-related expenses, which constitute *de facto* deductions from pay.

28

192.     Defendants have not obtained written authorization from Plaintiff Huffman or the Rule 23 Class to withhold a portion of their wages on account of the FLSA tip credit.

193.     Defendants did not act in good faith when they violated the North Carolina Wage and Hour Act.

194.     Plaintiff Huffman and the Rule 23 Class are entitled to their unpaid wages and unlawful deductions, liquidated damages in an amount equal to their unpaid wages and unlawful deductions, and interest for the two years preceding the filing of the complaint in this matter.

195.      Plaintiff Huffman and the Rule 23 Class are further entitled to recover their attorneys' fees and costs.

196.     As a result of Defendants' willful violations, Plaintiff Huffman and the Rule 23 Class are entitled to damages, including, but not limited to, unpaid wages, unreimbursed expenses, liquidated damages, costs, and attorneys' fees.

**Count 4**
**Failure to Pay Minimum Wages – SCPWA**
**(On Behalf of Plaintiff Sims and the Rule 23 South Carolina Class)**

197.     Plaintiff Sims restates and incorporates the foregoing allegations as if fully rewritten herein.

198.     Defendants are an "employer" as defined by the SCPWA.

199.     Defendants employed Plaintiff Sims within the state of South Carolina.

200.     Defendants failed to notify Plaintiff Sims and the Rule 23 Class at the time of hiring of the normal hours and wages agreed upon, the time and place of payment, and the deductions, which would be taken from the wages pursuant to S.C. Code Ann. § 41-10-30.

201.    Defendants illegally deducted amounts from the wages of Plaintiff Sims and the Rule 23 Class without providing proper notice as required by S.C. Code Ann. § 41-10-30(A).

202.    Plaintiff Sims and the Rule 23 Class did not receive proper notice of deductions taken from their wages as required by S.C. Code Ann. § 41-10-40(C).

203.    Plaintiff Sims and the Rule 23 Class were not paid all wages due by Defendants as required by S.C. Code Ann. § 41-10-40(D).

204.    Plaintiff Sims and the Rule 23 Class were not paid all wages due because they were not paid proper minimum wage.

205.    Defendants diverted or withheld portions of the wages of Plaintiff Sims and the Rule 23 Class.

206.    Defendants' unlawful deductions from the income of Plaintiff Sims and the Rule 23 Class were instituted willfully.

207.    By making deductions from the income of Plaintiff Sims and the Rule 23 Class, Defendants have violated the SCPWA.

208.    As a result of Defendants' violations of the SCPWA, Plaintiff Sims and other class members are entitled to reimbursement of mileage expenses at the IRS business mileage rate, treble damages, attorneys' fees, costs and injunctive relief.

**Count 5**
**Unjust Enrichment**
**(On Behalf of Plaintiff Huffman and Rule 23 North Carolina Class)**

209.    Plaintiff Huffman restates and incorporates the foregoing allegations as if fully rewritten herein.

210.     Plaintiff Huffman and the Rule 23 Class have conferred a benefit upon Defendants, namely, providing and maintaining "tools of the trade" for Defendants' benefit.

211.     The "tools of the trade" include vehicles, insurance for those vehicles, and cellphones.

212.     The benefit that Plaintiff Huffman and the Rule 23 Class conferred was not conferred officiously.

213.     The benefit that Plaintiff Huffman and the Rule 23 Class conferred was not gratuitous.

214.     The benefit that Plaintiff Huffman and the Rule 23 Class conferred was measureable.

215.     Defendants knew that Plaintiff Huffman and the Rule 23 North Carolina Class conferred that benefit on Defendants and consciously accepted the benefit.

216.     As described above, Defendants received benefits as a result of Plaintiff Huffman and the Rule 23 North Carolina Class providing and maintaining "tools of the trade."

217.     The benefits include, but are not limited to, direct and indirect financial benefits like increased profits, increased ability to compete on the price of Defendants' products, and increased business value.

218.     Defendants did not compensate or under-compensated Plaintiff Huffman and the Rule 23 Class for these benefits.

219.     Accordingly, Defendants retention of these benefits under these circumstances would be unjust.

220.     As a result of Defendants having been unjustly enriched, Plaintiff Huffman and the Rule 23 Class are entitled to compensation for the value of the benefit Plaintiff Huffman and the Rule 23 Class conferred on Defendants.

**Count 6**
**Unjust Enrichment**
**(On Behalf of Plaintiff Sims and Rule 23 South Carolina Class)**

221.    Plaintiff Sims restates and incorporates the foregoing allegations as if fully rewritten herein.

222.    Plaintiff Sims and the Rule 23 Class have conferred a benefit upon Defendants, namely, providing and maintaining "tools of the trade" for Defendants' benefit.

223.    The "tools of the trade" include vehicles, insurance for those vehicles, and cellphones.

224.    Defendants knew and realized that Plaintiff Sims and the Rule 23 Class conferred that benefit on Defendants.

225.    As described above, Defendants received benefits as a result of Plaintiff Sims and the Rule 23 Class providing and maintaining "tools of the trade.

226.    The benefits include, but are not limited to, direct and indirect financial benefits like increased profits, increased ability to compete on the price of Defendants' products, and increased business value.

227.    Defendants did not compensate or under-compensated Plaintiff Sims and the Rule 23 Class for these benefits.

228.    Accordingly, Defendants retention of these benefits under these circumstances would be unjust and it would be inequitable for them to retain them without paying its value.

229.    As a result of Defendants having been unjustly enriched, Plaintiff Sims and the Rule 23 Class are entitled to compensation for the value of the benefit Plaintiff Sims and the Rule 23 Class conferred on Defendants.

**WHEREFORE**, Plaintiff Karol Huffman and Jessica Sims, on behalf of themselves and those similarly situated, pray for the following relief:

A.     Designation of this action as a collective action on behalf of the collective action members and prompt issuance of notice to all similarly-situated members of an opt-in class, apprising them of this action, permitting them to assert timely wage and hour claims in this action, and appointment of Plaintiffs and their counsel to represent the collective action members.

B.     Unpaid minimum wages, unpaid overtime wages, reimbursement of expenses, and an additional and equal amount as liquidated damages pursuant to the FLSA and supporting regulations for Plaintiffs and the FLSA Collective.

C.     Certification of this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

D.     Designation of Plaintiff Huffman as representative of the Rule 23 Class and counsel of record as Class Counsel.

E.     Designation of Plaintiff Sims as representative of the Rule 23 South Carolina Class and counsel of record as Class Counsel.

F.     A declaratory judgment that the practices complained of herein are unlawful under the North Carolina Wage and Hour Act.

G.     An award of unpaid wages, unlawful deductions, and withheld wages due under the North Carolina Wage and Hour Act.

H.     An award of liquidated damages under the North Carolina Wage and Hour Act.

I.     An award of interest under the North Carolina Wage and Hour Act.

33

J.      A declaratory judgment that the practices complained of herein are unlawful under the SCPWA.

K.      An award of unpaid wages, unlawful deductions, and withheld wages due under the SCPWA.

L.      An award of treble damages under the SCPWA.

M.      An award of interest under the SCPWA.

N.      An award of the value of the benefits for which Defendants were unjustly enriched on behalf of the Rule 23 North Carolina Class.

O.      An award of the value of the benefits for which Defendants were unjustly enriched on behalf of the Rule 23 South Carolina Class.

P.      An award of prejudgment and post-judgment interest.

Q.      An award of costs and expenses of this action, together with reasonable attorneys' fees and expert fees.

R.      Such other legal and equitable relief as the Court deems appropriate.


Respectfully submitted,

*/s/ Phil Krzeski*
Mary-Ann Leon
N.C. State Bar No. 26476
The Leon Law Firm, P.C.
704 Cromwell Dr., Ste E
Greenville, NC 27858
Telephone: (252) 830-5366
*maleon@leonlaw.org*
www.leonlaw.org
Local Rule 83.1(d) Counsel

Andrew R. Biller (Ohio Bar #0081452)
BILLER & KIMBLE, LLC

34

4200 Regent Street, Suite 200
Columbus, OH 43219
Telephone: (614) 604-8759
Facsimile: (614) 340-4620
*abiller@billerkimble.com*

Andrew P. Kimble (Ohio Bar # 0093172)
Philip J. Krzeski (Ohio Bar # 0095713)
BILLER & KIMBLE, LLC
8044 Montgomery Rd., Ste. 515
Cincinnati, OH 45236
Telephone: (513) 715-8711
Facsimile: (614) 340-4620
*akimble@billerkimble.com*
*pkrzeski@billerkimble.com*
www.billerkimble.com

*Counsel for Plaintiff*

## JURY DEMAND

Plaintiffs hereby demand a jury trial by the maximum persons permitted by law on all

issues herein triable to a jury.

*/s/ Phil Krzeski*
Philip J. Krzeski