In the United States District Court
for the Eastern District of North Carolina
Eastern Division

| | |
|---|---|
| Karol Huffman and Jessica Sims, *On behalf of themselves and those similarly situated*, Plaintiffs, v. Team Carolinas, Inc., *et al.*, Defendants. | Case No. 4:2019-cv-00034 Judge Louise Wood Flanagan |

Plaintiffs' Unopposed Motion for Final Settlement Approval

Plaintiffs ask that the Court grant final approval of the parties' Settlement Agreement (ECF # 80-1), order the parties to carry out the terms of the Settlement Agreement, and dismiss the case with prejudice. The Settlement Agreement resolves the collective and class-wide claims raised in this lawsuit.

Respectfully submitted,

/s/*Mary-Ann Leon*
Mary-Ann Leon
N.C. State Bar No. 26476
The Leon Law Firm, P.C.
704 Cromwell Dr., Ste E
Greenville, NC 27858
Telephone: (252) 830-5366
maleon@leonlaw.org
www.leonlaw.org
Local Rule 83.1(d) Counsel

1

/s/*Phil Krzeski*
Andrew R. Biller (Ohio Bar # 0081452)
Biller & Kimble, LLC
4200 Regent Street, Suite 200
Columbus, OH 43219
Telephone: (614) 604-8759
Facsimile: (614) 340-4620
*abiller@billerkimble.com*

Andrew P. Kimble (Ohio Bar # 0093172)
Philip J. Krzeski (Ohio Bar # 0095713)
Biller & Kimble, LLC
8044 Montgomery Road, Suite 515
Cincinnati, OH 45236
Telephone: (513) 202-0710
Facsimile: (614) 340-4620
*akimble@billerkimble.com*
*pkrzeski@billerkimble.com*

www.billerkimble.com

*Counsel for Plaintiffs*

2

# Memorandum in Support of Plaintiffs' Unopposed Motion for Final Settlement Approval

1. **Introduction.**

   On October 27, 2020, the Court preliminarily approved the parties' Settlement Agreement and approved the distribution of notice to the class. *See* ECF # 81.

   The notice process is now complete. None of the Domino's delivery drivers who make up the class objected to or opted out of the Settlement.

   The Parties now seek an order (1) granting final approval of the Settlement Agreement previously filed as ECF # 80-1 as fair, reasonable, and adequate; (2) certifying this case as a Rule 23 Class Action for settlement purposes only; (3) finally certifying the collective for settlement purposes only; (4) approving the requested award of attorney's fees and costs; (5) approving the service award; (6) dismissing the action with prejudice; and (7) ordering the parties to carry out the remaining terms of the Settlement Agreement.

2. **Background and Case History.**

   Plaintiff Karol Huffman delivered pizzas for Defendants, who operate Domino's Pizza franchise stores in North Carolina and South Carolina. Plaintiff Huffman filed a Class and Collective Action Complaint on March 12, 2019, on behalf of herself and similarly situated delivery drivers who alleging wage and hour violations under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* (the "FLSA" claims) and the North Carolina Wage and Hour Act, N.C. Gen. Stat. 95-25.1 *et seq.* (the "NCWHA" claims). On February 10, 2021, Plaintiff amended her

complaint to add Jessica Sims as a Named Plaintiff and claims under South Carolina Payment of Wages Act, S.C. Code Ann. § 41-10-10 *et seq.* (the "SCPWA" claims). *See* ECF # 84, 84-1.

On April 24, 2019, Plaintiff Huffman moved to send notice of the lawsuit to similarly situated delivery drivers, with the purpose of affording them the opportunity to "opt-in" to the FLSA collective action. *See* ECF # 22-23. Before notice was sent, and as a means of facilitating potential settlement, the parties engaged in limited discovery and attended a mediation in an effort to settle the case, which the Court facilitated. *See* ECF # 29. That mediation did not result in an agreement to settle the case. On January 9, 2020, the Court approved Plaintiff's motion to send FLSA notice. *See* ECF # 39. Approximately 397 current and former delivery drivers opted into the conditionally certified collective action under the FLSA in this lawsuit. FLSA notice was sent to Defendants' delivery drivers in North Carolina and South Carolina, which prompted Plaintiff Huffman to seek to add Jessica Sims as a Named Plaintiff representing a Rule 23 class of South Carolina delivery drivers. *See* ECF # 61, 61-1, 62.

On April 23, 2020, the Parties attended a second mediation via Zoom with retired U.S. Magistrate Judge Stillman that went until after 8:00 PM EST. The mediation was successful and resulted in an agreement in principle that led to a formal Settlement Agreement. *See* ECF # 80, PageID 9. Plaintiffs filed an unopposed motion for approval of that settlement on June 1, 2020 (*see* ECF # 74–75), which was denied without prejudice on September 8, 2020, because Plaintiffs sought one-step settlement approval for part of the putative class. *See* ECF # 79. The Parties agreed to revise the settlement's distribution timeline and proposed the revised Settlement Agreement now before the Court (*see* ECF # 80, 80-1), which the Court preliminarily approved on October 27, 2020. *See* ECF # 81. Pursuant to the terms of the settlement agreement, a second

4

Case 4:19-cv-00034-FL    Document 85    Filed 02/19/21    Page 4 of 20

round of Notice was sent to the putative class and collective of similarly-situated drivers. Plaintiff Huffman amended her complaint on February 10, 2021. *See* ECF # 84-1. Plaintiffs now ask the Court to grant final approval.

**3. Description of Legal Claims.**

In Plaintiffs' First Amended Complaint, they allege several wage and hour violations. *See* ECF # 84-1. Plaintiffs described their claims in detail in Plaintiffs' Motion and Memorandum in Support of Renewed Motion to Approve Settlement and incorporate those arguments fully herein. *See* ECF # 80 at PageID 2–9.

The primary claim in this lawsuit is that Defendants paid delivery drivers at or close to minimum wage and, at the same time, required delivery drivers to pay for their own delivery expenses like vehicle maintenance, insurance, vehicle wear and tear, etc. There is little dispute that employers must reimburse their employees for these costs to the extent that these costs would otherwise reduce earnings below the minimum wage. The dispute in this case rests primarily on whether the reimbursement paid was adequate and whether there was a minimum wage violation. The Department of Labor's regulations expressly state that:

> "If it is a requirement of the employer that the employee must provide tools of the trade which . . . are specifically required for the performance of the . . . work, there would be a violation of the Act in any workweek when the cost of such tools . . . cuts into the minimum or overtime wages required to be paid him under the Act."

29 C.F.R. §531.35; *see also Castellanos–Contreras v. Decatur Hotels*, 22 F.3d 393 (5th Cir. 2010) (same).

The NCWHA requires that employers pay all wages and tips "accruing to" the drivers on a set payday. N.C. Stat. § 95-25.6. The NCWHA Class alleges that by failing to pay the proper minimum wage, Defendants have violated the NCWHA. *See* ECF # 84-1 (Counts 2, 3). "Where,

5

as here, the court has found a violation of the FLSA for improper deductions, be it actual or de facto, defendants are also liable for violation of the NCWHA for failing to pay the promised wage." *Gaxiola v. Williams Seafood of Arapahoe, Inc.*, 776 F. Supp. 2d 117, 132 (E.D.N.C. 2011). The NCWHA Class also alleges that Defendants were unjustly enriched at Plaintiffs' expense by providing direct and indirect financial benefits like increased profits, increased ability to compete on the price of Defendants' products, and increased business value. ECF #84-1 (Count 5).

The SCPWA requires that Defendants properly reimburse employees and that employers must provide written notice of deductions taken from employees' wages, must not "withhold or divert" any portion of the drivers' wages, and must pay "all wages due" to employees. S.C. Code. Ann. §§ 41-10-30, 41-10-40. The SCPWA Class alleges that by failing to properly reimburse their drivers, Defendants have violated the SCPWA. *Id.* (Count 4). Second, the SCPWA Class alleges that Defendants were unjustly enriched at Plaintiffs' expense by providing direct and indirect financial benefits like increased profits, increased ability to compete on the price of Defendants' products, and increased business value. *Id.* (Count 6).

Here, Plaintiffs alleged that Defendants reimbursed them and similarly situated delivery drivers on a per delivery or per mile basis, neither of which was enough to reimburse the drivers for their delivery expenses. ECF # 84-1. As part of the settlement negotiations, Defendants produced records showing that Defendants' drivers drove approximately 34 million miles during the relevant time period. During that same period, Defendants reimbursed the drivers approximately $6.27 million. Thus, Defendants reimbursed drivers an average of about $0.274 per mile.

Plaintiffs argue that the Department of Labor addressed this situation by giving employers two options: either track and reimburse actual expenses (as would typically be required under the FLSA) or reimburse at the IRS standard business mileage rate. DOL Field Operations Handbook § 30c15. Some courts have recognized the same binary choice. *See, e.g.*, *Hatmaker v. PJ Ohio, LLC*, No. 3:17-cv-146, 2019 U.S. Dist. LEXIS 191790 (S.D. Ohio Nov. 5, 2019); *Brandenburg v. Cousin Vinny's Pizza, LLC*, No. 3:16-cv-516, 2018 U.S. Dist. LEXIS 189878, at *11 (S.D. Ohio Nov. 6, 2018).

Defendants, on the other hand, argue they are not required to reimburse at the IRS rate or reimburse actual expenses, but instead may reasonably approximate the expenses associated with employees' business use of their personal vehicles. *See Wass v. NPC Int'l, Inc.*, 688 F. Supp. 2d 1282, 1287 (D. Kan. 2010); Department of Labor Opinion Letter FLSA-2020-12; *Blose v. Jarinc, Ltd. et al.*, Case No. 1:18-cv-2184-RM-SKC (D. Colo. Sept. 14, 2020); *Kennedy v. Mountainside Pizza, Inc.*, Case No. 1:19-cv-1199-CMA-STV (D. Colo. Aug. 26, 2020). Defendants contend that they adequately reimbursed the delivery drivers for all of their expenses. Defendants also maintain that the claims of the NCWHA Class are preempted and have asserted various separate and affirmative defenses to the FLSA, North Carolina and South Carolina claims.

On the mileage reimbursement claim, the possible unpaid wages range from $0 (i.e., if Defendants prevailed) to about $.276 per mile (i.e., if Plaintiffs prevailed and the Court measured damages as the difference between the approximate average IRS rate and the average reimbursement paid). At the IRS rate, the drivers' potential damages on the reimbursement claim

are approximately $13,929,116.37.$[1] Of course, a result between $0 and $14 million is also possible.

**4. Summary of Settlement Terms.**

The Settlement Agreement creates a Settlement Fund of $3,000,000.00. *See* ECF # 80-1 at ¶ 4.A. The Settlement Fund will be distributed to the class members in four rounds. *Id.* at ¶ 4.C. The distribution rounds are as follows:

(1) **Round 1 FLSA Subclass**: approximately $1,020,000.00 will be distributed to the 397 Class Members who returned the consent to join form to Plaintiffs' Counsel on or before April 30, 2020, on a prorated share based on miles driven by all Round 1 FLSA Subclass members. *Id.* at ¶ 4.C.i.

(2) **Round 2 FLSA Subclass**: approximately $400,000.00 will be available for Class Members who are not a member of the Round 1 FLSA Subclass, but returned a Claim Form prior to entry of the Final Approval Order after receiving notice of the settlement. Round 2 FLSA Subclass members will receive either a check for $.176 per mile driven during the settlement period, or a prorated share based on miles driven by all Round 2 FLSA Subclass members if the total claims made would exceed $400,000.00. *Id.* at ¶ 4.C.ii.

(3) **Round 3 State Law Subclass**: approximately $500,000.00 will be available for all Class Members who did not opt in to either the Round 1 FLSA Subclass or the Round 2 FLSA Subclass. This portion will be divided on a prorated basis according to the

---

[1] The total damages figure breakdown as follows: $7,646,591.04 (unpaid wages, liquidated damages, and statutory interest of 8% under the NCWHA) + $479,871.67 (20% estimated opt-in rate for year 3 North Carolina delivery drivers under the FLSA) + $1,934,217.89 (unpaid wages for South Carolina delivery drivers) + $3,868,435.77 (treble damages under the SCPWA).

8

Case 4:19-cv-00034-FL    Document 85    Filed 02/19/21    Page 8 of 20

number of miles driven by all Round 3 State Law Subclass Members, subject to a minimum payment of $25.00. *Id.* at ¶ 4.C.iii.

(4) **Round 4 Contingency FLSA Subclass**: $300,000.00 of the Settlement, plus whatever amount is not distributed from the previous rounds, will be allocated to the Contingency FLSA Subclass. The Contingency FLSA Subclass is comprised of any member of the State Law Subclass who does not receive payment from the Round 1 FLSA Fund or the Round 2 FLSA Fund. Potential members of the Contingency FLSA Class must make a claim against the Contingency FLSA Fund to be included. Payments will be calculated at $.176 per mile driven and will be disbursed in three rounds over the course of three years based on a Contingency FLSA Class Member's calculated damages or a prorated share. *Id.* at ¶ 4.C.iv. Remaining funds will be disbursed to Plaintiffs who were reimbursed at less than $.176 per mile or to the North Carolina State Bar Indigent Person's Attorney Fund, the South Carolina Bar Foundation, and *cy pres* to the Domino's Partners Foundation. *Id.* at ¶ 4.C.iv.4.

Any FLSA Subclass Member[2] releases all wage and hour claims accrued from March 12, 2016 until April 30, 2020, arising out of the facts asserted in the Lawsuit that were made against Defendants or the Released Parties, including claims relating to the under-reimbursement of expenses, "dual jobs/80-20" claims, tip credit notice claims, wage notification, posting, deduction, withholdings, recordkeeping and paycheck claims, and any related common law and equitable (e.g., breach of contract, unjust enrichment, etc.) including any related claims for liquidated damages, penalties, attorneys' fees and costs (including claims administration fees),

---

[2] I.e., any individual who has submitted a Round 1 FLSA consent to join form, who has submitted a Round 2 FLSA Claim Form, or makes a claim for a distribution from the Contingency FLSA Fund or cashes or otherwise negotiates his or her check received from the Round 1 FLSA Fund, the Round 2 FLSA Fund, or the Contingency FLSA Fund.

and interest, that could be pursued under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*, the wage and hour laws of North Carolina, the wage and hour laws of South Carolina, and any applicable state, local or municipal law or regulation, whether known or unknown; and any and all derivative claims relating to unpaid wages, minimum wage or overtime compensation against the Defendants or Released Parties relating to the facts asserted in this Lawsuit. *Id.* at ¶ 6.B.

The Settlement Agreement requires distribution of payments to the Round 1 FLSA Subclass, Round 2 FLSA Subclass, and the Round 3 State Law Subclass within 40 days of the Court granting final approval. *Id.* at ¶ 4.C.i–iii. Distributions to the Contingency FLSA Subclass will be made in three rounds. First, any valid claim on the contingency fund received on or before April 15, 2021, will be paid out on or within 14 days of April 30, 2021. *Id.* at ¶ 4 C.iv.f.1. Second, any valid claim on the contingency fund received between May 1, 2021, and April 15, 2022, will be paid out on or within 14 days of April 30, 2022. *Id.* at ¶ 4 C.iv.f.2. Third, any valid claim on the contingency fund received between May 1, 2022, and May 15, 2023, will be paid out on or within 14 days of May 30, 2023. *Id.* at ¶ 4 C.iv.f.3. Finally, any unclaimed funds as of May 15, 2023 will be distributed on June 14, 2023.[3] *Id.* at ¶ 4 C.iv.f.4.

5. **Standard for Settlement Approval.**

There is a strong judicial policy in favor of settlement in order conserve scarce resources that would otherwise be devoted to protracted litigation. *See In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 158–59 (4th Cir. 1991); *In re Microstrategy, Inc., Sec. Litig.*, 148 F.Supp.2d 654, 663 (E.D. Va. 2001); *see also Ehrheart v. Verizon Wireless*, 609 F.3d 589, 594–95 (3d Cir. 2010) (there is an "especially strong" presumption in favor of voluntary settlements "in class actions…where

---

[3] Note that the Settlement Agreement States that the distribution will be on May 14th, but this would not make sense. The parties intend the distribution date to be after the date to check for unclaimed funds and agree to June 14th for the distribution date.

10

substantial judicial resources can be conserved by avoiding formal litigation"); Newberg §§ 11.41 ("The compromise of complex litigation can be encouraged by the courts and favored by public policy."). This includes the "strong initial presumption" in class action cases "that the compromise is fair and reasonable." *In re Microstrategy*, 148 F.Supp.2d at 663 (internal quotations omitted).

### 5.1. Standard for Wage and Hour Settlements.

With respect to approving an FLSA settlement, courts look at whether the settlement is a fair and reasonable resolution of a bona fide dispute. *Patel v. Barot*, 15 F. Supp. 3d 648, 654 (E.D. Va. 2014). "The standards governing court approval of settlements under Rule 23 and the FLSA are nearly identical but for the FLSA's 'bona fide dispute' requirement." *Hall v. Higher One Machs., Inc.*, No. 5:15-CV-670-F, 2016 U.S. Dist. LEXIS 131009, at *13–14 (E.D.N.C. Sep. 26, 2016) (citing *Dyson v. Stuart Petroleum Testers, Inc.*, No. 1-15-CV-282-RP, 2016 U.S. Dist. LEXIS 24190, at *6–7 (W.D. Tex. Feb. 29, 2016)). "A bona fide dispute is one in which there is some doubt whether the plaintiff would succeed on the merits at trial." *Id.* at *15 (citing *Lynn's Food Stores, Inc. v. U.S. ex rel. U.S. Dep't of Labor*, 679 F.2d 1350, 1354 (11th Cir. 1982)). "In deciding whether a bona fide dispute exists as to a defendant's liability under the FLSA, courts examine the pleadings in the case, along with the representations and recitals in the proposed settlement agreement." *Id.* at *15–17 (citing *Amaya Amaya v. Young & Chang, Inc.*, No. PWG-14-749, 2014 U.S. Dist. LEXIS 99591, at *5 (D. Md. July 22, 2014)). This lawsuit has been the product of a

bona fide dispute, demonstrated by the pleadings, years of litigation, and multiple rounds of settlement negotiations.[4]

**5.2. Standard for Rule 23 Settlements.**

With respect to a class settlement, settlements are approved following a two-step process. *See Horton v. Merrill Lynch, Pierce, Fenner, & Smith, Inc.*, 855 F. Supp. 825, 827 (E.D.N.C. 1994). Preliminary approval, the first step, allows notice to be issued and permits class members to object or opt out of the settlement and serves as a determination that there is "probable cause" to "submit the proposal to class members and hold a full-scale hearing as to its fairness." *In re Outer Banks Power Outage Litig.*, No. 17 Civ. 141, 2018 U.S. Dist. LEXIS 73795, *9 (E.D.N.C. May 2, 2018) (quoting *Menkes v. Stolt-Nielsen S.A.*, 270 F.R.D. 80, 101 (D. Conn. 2010)). At the second step, "the primary objective of requiring the court's final approval of a proposed settlement in a class action suit is to protect class members 'whose rights may not have been given adequate consideration during the settlement negotiations,' and ultimately to determine whether the settlement is fair, reasonable and adequate." *See Horton*, 855 F. Supp. at 828 (citing *Jiffy Lube*, 927 F.2d at 158.

Courts assess a proposed class settlement to determine whether, as a whole, it is fair, reasonable, and adequate to class members. *United States v. North Carolina*, 180 F.3d 574, 581 (4th Cir. 1999); Fed. R. Civ. P. 23(e)(2). Specifically, courts in the Fourth Circuit consider (1) whether the settlement was the product of good faith bargaining, at arm's length, and without collusion; (2) the relative strength of the Parties' cases, as well as the uncertainties of litigation on the merits, and the existence of difficulties of proof or strong defenses that the plaintiffs are

---

[4] In a recent decision approving a similar pizza delivery driver lawsuit settlement without directly addressing the FLSA approval standard, implicitly recognizing that there was a bona fide dispute, and thus performed only the Rule 23 analysis. *Chrismon v. Pizza*, No. 5:19-cv-155-BO, 2020 U.S. Dist. LEXIS 119873, *9–13 (E.D.N.C. July 7, 2020).

likely to encounter at trial; (3) the complexity, expense, and likely duration of additional litigation; (4) the solvency of defendants and the likelihood of recovery on a litigated judgment; and (5) the degree of opposition to the settlement by class members. *Jiffy Lube*, 927 F.2d at 159; *see also Flinn v. FMC Corp.*, 528 F.2d 1169, 1173 (4th Cir. 1975). These factors support approval here.

In their Motion for Preliminary approval, Plaintiffs discussed in detail why all factors other than factor (5) were met. *See* ECF # 87, § 6. Now that the notice period has ended, Plaintiffs are able to discuss factor (5). Since none of the class members opted out of or objected to the settlement, factor (5) also favors final approval.

6. **Notice Process.**

Plaintiffs' Counsel sent notice by first class mail and email (to the extent there was an email address available) to 3,744 Class Members. Notice was issued by claims administrator CAC Services Group, LLC ("CAC Services") via First Class Mail and email. To the extent mailings were returned as undeliverable, CAC Services obtained address corrections and performed address tracing to obtain new mailing addresses. Ultimately, CAC was able to deliver notices to 95.51% of the Class Members. The notice period was 60 days, which ended on January 16, 2021. Approximately 408 Class Members have returned Claim Forms and will participate in the Round 2 FLSA Subclass. Thus far, and no class member has objected to or opted out of the settlement.

7. **Certification of Settlement Class is appropriate.**

Plaintiffs explained why Rule 23 class and FLSA collective certification are appropriate in their Motion for Preliminary Approval and incorporate those arguments herein. *See* ECF # 87, §§ 7–9. Defendants consent to class/collective action certification for settlement purposes. *See id.*

13

In its Order Granting Preliminary Approval, the Court certified the Rule 23 class and the FLSA collective action classes. ECF # 81, ¶¶ 2–3. Plaintiffs incorporate their arguments from the Motion for Preliminary Approval for why certification of a Rule 23 Settlement Class is appropriate. *See* ECF # 80 at PageID 18–23.

8. **The payment of attorney's fees and costs is reasonable.**

In its Order Granting Preliminary Approval, the Court provisionally approved Plaintiffs' Counsel's request for attorney's fees and costs. ECF # 81, ¶ 12. The Court explained that the "fees and costs will be approved after the final hearing occurs, taking into account any objections." *Id.* There have been no objections.

Class Counsel applies for one-third of the amount of money going to class members (i.e., not the entire settlement amount, as is typical) as attorneys' fees. This amount is $736,837.29. Under the Settlement Agreement, this amount is paid *separately* from the Settlement Fund. Thus, the amounts allocated to class members discussed above will not be reduced by the proposed award. The Settlement Agreement is not conditioned on an award of attorney's fees. *See* ECF # 80-2 at ¶ 34.

The method of calculating fees used here results in a lower fee than usual awards in the Fourth Circuit.[5] Another court in this district in another pizza delivery driver case observed that

---

[5] The Fourth Circuit examines the reasonableness of a fee request through a percentage of fund analysis subject to a lodestar cross-check, but "[a]ssessing the fairness of attorney's fees under an FLSA settlement negotiated at arm's length is not identical to determining their reasonableness using the familiar lodestar method." *Devine v. City of Hampton, Virginia*, No. 4:14cv81, 2015 U.S. Dist. LEXIS 177155, at *42 (E.D. Va. Dec. 1, 2015); *see also Hatzey v. Divurgent, LLC*, No. 2:18-cv-191, 2018 U.S. Dist. LEXIS 187007, at *5 (E.D. Va. Oct. 9, 2019) (awarding one-third of settlement fund of $2,450,000); *Hoffman v. First Student Inc.*, No. WDQ-06-1882, 2010 U.S. Dist. LEXIS 23729, at *11 (D. Md. March. 23, 2010) ("Under the FLSA and the terms of lead class members' agreement with counsel, Plaintiffs' counsel may recover one-third of the damages award. Because this amount appropriately reflects the time spent and expenses incurred by Plaintiffs' counsel in this litigation, fees and costs are reasonable and appropriate"); *see also DeWitt v. Darlington Cty., S.C.*, No. 11 Civ. 740, 2013 U.S. Dist. LEXIS 172624, at *24 (D.S.C. Dec. 6, 2013) (noting that "[o]ne-third of the recovery appears to be a fairly common percentage in contingency cases,

"[m]any courts in the Fourth Circuit have held that attorneys' fees in the amount of 1/3 of the settlement fund is reasonable." *Chrismon*, 2020 U.S. Dist. LEXIS 119873, at *12. Typically, fee awards are based on the entire settlement fund, inclusive of fees, expenses, and service awards. *See, e.g., Devine*, 2015 U.S. Dist. LEXIS 177155, at *42 (settlement agreement provided attorney's fees in the amount of approximately 33%); *Hatzey*, 2018 U.S. Dist. LEXIS 187007, at *5.[6] "[T]here is a consensus among the federal circuit courts of appeal that the award of attorneys' fees in common fund cases may be based on a percentage of the recovery. This consensus derives from the recognition that the percentage of fund approach is the better-reasoned and more equitable method of determining attorneys' fees in such cases." *Ferris v. Sprint Communs. Co. L.P.*, Civil Action No. 5:11-cv-00667-H, 2012 U.S. Dist. LEXIS 198702, at

---

especially where the settlement amount is not-so large as to produce a windfall"); *Decohen v. Abbasi, LLC*, 299 F.R.D. 469, 483 (D. Md. 2014); *Deem v. Ames True Temper, Inc.*, No. 6:10-cv-01339, 2013 U.S. Dist. LEXIS 72981, at *14 (S.D. W. V. May 23, 2013).

[6] Awarding approximately one-third of a settlement's value is common in other courts. *See In re Penn Treaty Am. Corp.*, Civ. A. No. 01-1896 (E.D. Pa. Feb. 5, 2004) (awarding 30% of $2.3 million settlement fund); *In re Corel Corp. Sec. Litig.*, 293 F.Supp.2d 484, 495–98 (E.D. Pa. 2003) (awarding one-third of $7 million settlement fund, plus expenses); *Brumley v. Camin Cargo Control, Inc.*, Nos. 08 Civ. 1798, 2012 U.S. Dist. LEXIS 40599, at *36 (D.N.J. Mar. 26, 2012) (granting attorneys' fee request of one-third of $3.9 million settlement fund in wage and hour class action); *In re Foundry Resins Antitrust Litig.*, No. 04-md-01639, Doc. 245 (S.D. Ohio Mar. 31, 2008) (order awarding a fee of 33 1/3% of a $14.1 million dollar settlement); *In re Packaged Ice Antitrust Litig.*, Case No. No. 08-MDL-01952, 2011 U.S. Dist. LEXIS 150427, at *76-77 (E.D. Mich. Dec. 13, 2011) ("Importantly, the requested award of close to 30% appears to be a fairly well-accepted ratio in cases of this type and generally in complex class actions.") (Internal citations omitted); *In re Skelaxin Antitrust Litig.*, Case No. 2:12-cv-83, 2014 U.S. Dist. LEXIS 91661, at *5 (E.D. Tenn. June 30, 2014) (finding "the requested counsel fee of one third is fair and reasonable and fully justified."); *Thacker v. Chesapeake Appalachia*, LLC, 695 F. Supp. 2d 521, 528 (E.D. Ky. 2010) ("Using the percentage approach, courts in this jurisdiction and beyond have regularly determined that 30% fee awards are reasonable."); *Kimmel v. Venture Construction Co.*, Case No. 1:10-cv-01388-RLV (N.D. Ga. 2010) (Dkt. 70) (approving 30% of common fund as attorneys' fees and costs); *Moultry v. Cemex, Inc.*, Case No. 8:07-cv-00453- MSS, Dkt. 145 (M.D. Fla. 2008) (awarding 32.25% of common fund as attorneys' fees); *Kemper v. Rent-A-Center, Inc.*, Case No. 4:00-cv-00435-RH-WCS, Docs. 14–15 (N.D. Fla. 2000) (awarding 33.33% of common fund approach to plaintiffs' counsel). In *In re AremisSoft Sec. Litig.*, 210 F.R.D. 109, 134 (D.N.J. 2002), the court stated that "[s]cores of cases exist where fees were awarded in the one-third to one-half of the settlement fund." *See, e.g.*, *Erie County Retirees Ass'n v. County of Erie*, 192 F. Supp. 2d 369, 382–83 (38% of common fund was awarded in ADEA case); *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 179–80 (W.D.N.Y. 2005) (almost 40% of $125,000 common fund awarded in a FLSA case); *Gilliam v. Addicts Rehab. Ctr. Fund*, Case No. 05 Civ. 3452(RLE), 2008 U.S. Dist. LEXIS 23016, at *5 (S.D.N.Y. Mar. 24, 2008) (finding it reasonable to award class counsel a fee of one-third of the common fund).

*6 (E.D.N.C. Dec. 13, 2012) (citing *Muhammad v. Nat'l City Mortg., Inc.*, Civil Action No. 2:07-0423, 2008 U.S. Dist. LEXIS 103534, at *7 (S.D. W. Va. Dec. 19, 2008)).

Thus, because the gross settlement value here is $3,000,000.00, an attorney fee award of $1,000,000.00 would be appropriate. However, Plaintiffs' Counsel base their request on one-third of what the class members will *actually receive*, exclusive of fees and expenses. As a percentage of the gross settlement amount, the request is 24.6%, which means that the Class Members stand to gain additional benefit from this lower-than-usual percentage request.

Further, although Plaintiffs' Counsel are relying upon a quote from CAC group for administering the settlement, Plaintiffs' Counsel agreed to pay any additional expenses related to CAC's administration. To date, Plaintiffs' Counsel have incurred $32,004.38 in expenses. *See* Declaration Andrew R. Biller at ¶ 31 attached as Exhibit 1. The Claims Administrator will incur additional costs distributing the settlement proceeds. The Settlement Agreement allocates up to $52,650.85 for expenses, costs, and service awards. If costs exceed that amount, Plaintiffs' Counsel bears the burden. *See* ECF # 80-1 at ¶ 5. Thus, it is possible that Plaintiffs' Counsel will recover less than the proposed fee award because some of that award may be taken up by expenses.

In its Order granting provisional approval, the Court provisionally approved both Plaintiffs Counsel's requested attorney's fees and the proposed costs. *See* ECF # 81. Now that the notice period is complete, Plaintiffs can report there were no objections to the settlement. Accordingly, Class Counsel request one-third of the Settlement in the amount of $736,837.29 in attorneys' fees and up to $52,650.85 in reasonable litigation and settlement administration costs. These costs include the filing fee, copying costs, notice costs, postage, managing the settlement

database, and time spent on settlement administration duties. Plaintiffs respectfully request the court approve Plaintiffs' Counsel's requested fees and costs.

9. **The incentive payment to Plaintiffs should be approved.**

In its Order granting Preliminary Approval, the Court found the proposed award reasonable. ECF # 81, ¶ 10. The settlement agreement earmarks a $10,000.00 service award for Plaintiff Karol Huffman and a $2,500.00 service award for Plaintiff Jessica Sims from the amount allocated for attorney's fees and costs, separate from the Round 1–3 distributions. ECF # 80-1 at ¶ 5.F. This amount is in line with nearly identical amounts in nearly identical cases. *See Chrismon*, 2020 U.S. Dist. LEXIS 119873, at *14; *see also Arledge v. Domino's Pizza*, No. 3:16-cv-386, 2018 U.S. Dist. LEXIS 179474, at *16 (S.D. Ohio Oct. 17, 2018); *Mullins v. Southern Ohio Pizza*, No. 1:17-cv-146, 2019 U.S. Dist. LEXIS 11019, at *16-17 (S.D. Ohio Jan. 18, 2019); *Brandenburg v. Cousin Vinny's Pizza, LLC*, No. 3:16-cv-516, 2019 U.S. Dist. LEXIS 204371, at *21-22; *Casteel v. Antonio's Pizza, Inc.*, No. 1:18-cv-1277, ECF # 52 (N.D. Ohio May 17, 2019). "Courts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *Haught v. Summit Res., LLC*, No. 1:15-cv-0069, 2016 U.S. Dist. LEXIS 45045, at *19-21(M.D. Pa. Apr. 4, 2016); *Young v. Rolling in the Dough, Inc.*, No. 1:17-cv-07825, 2020 U.S. Dist. LEXIS 35941, at *17 (N.D. Ill. Feb. 26, 2020) (approving a $10,000.00 service award to the Named Plaintiff, citing a case that approved six $10,000.00 service awards to the Named Plaintiffs). Plaintiff Huffman's award is larger to reflect her longer-term and more demanding contribution to this case as the original Named Plaintiff. Plaintiff Sims' award reflects her more recent, but necessary, involvement in vindicating the claims of the SCPWA Class. Both Named Plaintiffs spent time and effort working

with Counsel on this case. Both Named Plaintiffs bore risk in proceeding with the case, including financial and reputational risk. Without both Named Plaintiffs' participation, this class settlement would not have occurred. Plaintiffs ask the Court to approve the service fee award.

**10. Conclusion**

For the reasons set forth above, Plaintiffs respectfully request that the Court grant their motion for Motion for Final Settlement Approval and for an Award of Attorney's Fees and Expenses and enter the Proposed Order.

Respectfully submitted,

/s/*Mary-Ann Leon*
Mary-Ann Leon
N.C. State Bar No. 26476
THE LEON LAW FIRM, P.C.
704 Cromwell Dr., Ste E
Greenville, NC 27858
Telephone: (252) 830-5366
maleon@leonlaw.org
www.leonlaw.org
Local Rule 83.1(d) Counsel

/s/*Phil Krzeski*
Andrew R. Biller (Ohio Bar # 0081452)
BILLER & KIMBLE, LLC
4200 Regent Street, Suite 200
Columbus, OH 43219
Telephone: (614) 604-8759
Facsimile: (614) 340-4620
*abiller@billerkimble.com*

Andrew P. Kimble (Ohio Bar # 0093172)
Philip J. Krzeski (Ohio Bar # 0095713)
BILLER & KIMBLE, LLC
8044 Montgomery Road, Suite 515
Cincinnati, OH 45236
Telephone: (513) 202-0710
Facsimile: (614) 340-4620
*akimble@billerkimble.com*

18

*pkrzeski@billerkimble.com*

[www.billerkimble.com](www.billerkimble.com)
*Counsel for Plaintiffs*

**Certificate of Service**

I hereby certify that a copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.

> /s/*Phil Krzeski*
> Phillip J. Krzeski