IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

| | |
|---|---|
| Karol Huffman, *et al.*, | ) |
| *On behalf of themselves and those similarly situated*, | ) Case No. 4:19-cv-00034 |
| Plaintiffs, | ) Judge Louise Wood Flanagan |
| v. | ) Order Granting Unopposed Motion for Final Settlement Approval |
| Team Carolinas, Inc., *et al.*, | ) |
| Defendants. | ) |

Before the Court is Plaintiffs' unopposed Motion for Final Settlement Approval. Having carefully considered the Plaintiffs' Motion for Final Approval and the parties Settlement Agreement and Release ("Settlement Agreement"), the undersigned **GRANTS** the Motion for Final Approval and **APPROVES** the settlement set forth in the Settlement Agreement.

1. **Background**

This is a wage and hour lawsuit brought on behalf of a class of pizza delivery drivers who worked at the Domino's Pizza stores owned and operated by Defendants Team Carolinas and Osman Qasim in North Carolina and South Carolina. *See* First Amended Complaint, ECF # 84-1. Plaintiff Karol Huffman filed her Complaint on March 12, 2019. ECF No. 1. On April 24, 2019, Plaintiff moved to conditionally certify this matter as a collective action. *See* ECF #. 23. On September 18, 2019, before Plaintiff's Motion was decided, the Parties submitted a Joint Motion to Stay this action to allow time for the parties to try to resolve the case. ECF # 28. In their Joint

1

Motion, the parties stipulated that if they were not able to settle the case, FLSA collective action notice would be distributed to putative opt-in Plaintiffs. *Id*. The Court granted the Joint Motion. ECF # 29. The parties attended two mediations: the first in October 2019, and the second in April of 2020. The first mediation was unsuccessful, and per the Joint Motion to Stay, Plaintiff sent notice of this collective action to putative opt-in delivery drivers. Approximately 397 delivery drivers opted into the case. A second mediation took place in April 2020. That mediation resulted in a Settlement Agreement that is currently before the Court. *See* ECF # 80-1. Pursuant to the parties' settlement, Plaintiff filed an Amended Complaint. *See* ECF # 81 and 84.

Plaintiff's primary claim in this lawsuit is that Defendants paid delivery drivers at or close to minimum wage and, at the same time, required delivery drivers to pay for their own delivery expenses like vehicle maintenance, insurance, vehicle wear and tear, etc., but failed to sufficiently reimburse the drivers for these costs. Plaintiffs claim that this practice results in a violation of the Fair Labor Standards Act, the North Carolina Wage and Hour Act, and the South Carolina Payment of Wages Act. ECF # 84-1.

Defendants deny Plaintiff's claims and claim they paid and reimbursed their delivery drivers properly. Defendants have asserted a number of separate and affirmative defenses to this action. E.C.F. # 16. The Court acknowledges that Defendants agreed to class certification pursuant to Rule 23 and collective action certification pursuant to Section 216(b) for settlement purposes only.

## 2. The Settlement Agreement

### 2.1. The Settlement Amount and Distribution

The Settlement Agreement creates a Settlement Fund of $3,000,000.00. *See* ECF # 80-1 at ¶ 4.A. The Settlement Fund will be distributed to the class members in four rounds. *Id.* at ¶ 4.C. The distribution rounds are as follows:

(1) **Round 1 FLSA Subclass**: approximately $1,020,000.00 will be distributed to the 397 Class Members who returned the consent to join form to Plaintiffs' Counsel on or before April 30, 2020, on a prorated share based on miles driven by all Round 1 FLSA Subclass members. *Id.* at ¶ 4.C.i.

(2) **Round 2 FLSA Subclass**: approximately $400,000.00 will be available for Class Members who are not a member of the Round 1 FLSA Subclass, but return a Claim Form prior to entry of the Final Approval Order after receiving notice of the settlement. Round 2 FLSA Subclass members will receive either a check for $.176 per mile driven during the settlement period, or a prorated share based on miles driven by all Round 2 FLSA Subclass members if the total claims made would exceed $400,000.00. *Id.* at ¶ 4.C.ii.

(3) **Round 3 State Law Subclass**: approximately $500,000.00 will be available for all Class Members who did not opt in to either the Round 1 FLSA Subclass or the Round 2 FLSA Subclass. This portion will be divided on a prorated basis according to the number of miles driven by all Round 3 State Law Subclass Members, subject to a minimum payment of $25.00. *Id.* at ¶ 4.C.iii.

(4) **Round 4 Contingency FLSA Subclass**: $300,000.00 of the Settlement, plus whatever amount is not distributed from the previous rounds, will be allocated to the Contingency FLSA Subclass. The Contingency FLSA Subclass is comprised of any member of the State Law Subclass who does not receive payment from the Round 1 FLSA Fund or the Round 2 FLSA Fund. Remaining funds will be disbursed to Plaintiffs who were reimbursed at less than $.176 per mile or to the North Carolina State Bar Indigent Person's Attorney Fund, the South Carolina Bar Foundation, and cy pres to the Domino's Partners Foundation. *Id.* at ¶ 4.C.iv.4.

The Settlement Agreement requires distribution of payments to the Round 1 FLSA Subclass, Round 2 FLSA Subclass, and the Round 3 State Law Subclass within 40 days of the Court granting final approval. *Id.* at 4.C.i–iii. Distributions to the Contingency FLSA Subclass will be made in

three rounds as set forth in the Settlement Agreement. *Id.* at ¶ 4.C.iv. Round 1 and Round 2 FLSA Subclass Members release all claims defined in ¶ 6(A)-(B). Round 3 Subclass Members release all claims as defined in the Settlement Agreement defined in ¶ 6(C). Named Plaintiffs Huffman and Sims have submitted a general release. *See* ECF No. 80-1 at pgs. 40-54.

## 2.2 Release Provisions

Paragraph 6 of the Settlement Agreement (*see* ECF # 80-1) sets forth the following release provisions:

A. The term "Released Parties" includes Defendants and all related entities, along with all their predecessors, successors, parents, subsidiaries, franchisors including Domino's Pizza LLC (and its related entities), insurers, affiliates, owners, members, stockholders, officers, directors, employees, partners, shareholders, agents, legal representatives, affiliates, insurance carriers and all persons acting by, through, under or in concert with them.

B. Any FLSA Subclass Member (i.e., any individual who has submitted a Round 1 FLSA consent to join form, who submits a Round 2 FLSA Claim Form, or makes a claim for a distribution from the Contingency FLSA Fund, or cashes or otherwise negotiates his or her check received from the Round 1 FLSA Fund, the Round 2 FLSA Fund, or the Contingency FLSA Fund) releases all wage and hour claims accrued from March 12, 2016 until April 30, 2020, arising out of the facts asserted in the Lawsuit that were made against Defendants or the Released Parties, including claims relating to the under-reimbursement of expenses, "dual jobs/80-20" claims, tip credit notice claims, wage notification, posting, deduction, withholdings, recordkeeping and paycheck claims, and any related common law and equitable (e.g., breach of contract, unjust enrichment, etc.) including any related claims for liquidated damages, penalties, attorneys' fees and costs (including claims administration fees), and interest, that could be pursued under the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.*, the wage and hour laws of North Carolina, the wage and hour laws of South Carolina, and any applicable state, local or municipal law or regulation, whether known or unknown; and any and all derivative claims relating to unpaid wages, minimum wage or overtime compensation against the Defendants or Released Parties relating to the facts asserted in this Lawsuit.

C. Each Class Member who does not opt-out of the Settlement releases all wage and hour claims accrued from March 12, 2016 until April 30, 2020, arising out of the facts asserted in the Lawsuit that were made against Defendants or the Released Parties, including claims relating to the under-reimbursement of expenses, "dual jobs" claims, tip credit notice claims, wage notification, posting, deduction, withholdings, recordkeeping and paycheck claims, and any related common law and equitable (e.g., breach of contract, unjust

enrichment, etc., including any related claims for liquidated damages, penalties, attorneys' fees and costs, and interest, that could be pursued under the wage and hour laws of North Carolina, the wage and hour laws of South Carolina, and any applicable state, local or municipal law or regulation, whether known or unknown; any and all claims for breach of contract relating to the facts asserted in this Lawsuit; any and all claims for unpaid or underpaid employee expense reimbursement relating to the facts asserted in this Lawsuit; any and all claims for unjust enrichment relating to the facts asserted in this Lawsuit; and any and all derivative claims relating to unpaid wages or minimum wage compensation against the Defendants or Released Parties relating to the facts asserted in this Lawsuit.

3. Analysis

   3.1. **Class Certification is Appropriate for Settlement Purposes.**

   The Court hereby certifies the following Rule 23 settlement class:

   All current and former delivery drivers employed from March 12, 2016 to April 30, 2020 at the Team Carolinas Domino's stores owned, operated, and/or controlled by Defendants.

The Settlement Class meets all of the requirements for class certification under Federal Rule of Civil Procedure 23(a) and (b)(3) for purposes of settlement. Again, the Court acknowledges that Defendants agreed to class certification pursuant to Rule 23 and collective action certification pursuant to Section 216(b) for settlement purposes only.

Federal Rule of Civil Procedure 23(a)(1) is satisfied because there are approximately 3,089 class members, and thus, joinder is impracticable.

Plaintiffs satisfy Federal Rule of Civil Procedure 23(a)(2) because Plaintiffs and the class members share common issues of fact and law. Plaintiffs allege that Defendants' reimbursement policy harmed all of the class members in the same way. Defendants do not contest that commonality is satisfied for settlement purposes.

For the same reason, Plaintiffs satisfy the typicality requirement in Federal Rule of Civil Procedure 23(a)(3) because Plaintiffs' claims alleged arise from the same factual and legal

circumstances that form the basis of the class members claims. Defendants do not contest that typicality is satisfied for settlement purposes.

Plaintiffs satisfy Federal Rule of Civil Procedure 23(a)(4) because there is no evidence that either Plaintiff has interests antagonistic to or at odds with those of Class Members.

Plaintiffs also satisfy Federal Rule of Civil Procedure 23(b)(3) for settlement purposes. Class Members' common factual allegations and legal theory predominate over any factual or legal variations among Class Members. Defendants do not contest predominance is satisfied for settlement purposes.

The Court appoints Biller & Kimble, LLC, and The Leon Law Firm as class counsel because they meet all of the requirements of Rule 23(g).

Finally, the Court finds that the Class Notice process undertaken by the Claims Administrator met the requirements of Rule 23(e)(1), and the government notices provided met the requirements of CAFA.

The Court also finds that all FLSA opt-in Plaintiffs are properly joined to the case, and that the case is properly **CERTIFIED** as a collective action pursuant to Section 216(b) of the FLSA. The proposed Rule 23 Settlement Class of delivery drivers employed by Defendants from March 12, 2016 to April 30, 2020 at Team Carolinas Domino's stores owned, operated, and/or controlled by Defendants is also **CERTIFIED**.

**3.2. The parties' settlement is fair, reasonable, and adequate.**

Rule 23(e) requires court approval for a class action settlement so that it is procedurally and substantively fair, reasonable, and adequate. FED. R. CIV. P. 23(e); *United States v. North Carolina*, 180 F.3d 574, 581 (4th Cir. 1999). There is a strong judicial policy in favor of settlement,

6

in order conserve scarce resources that would otherwise be devoted to protracted litigation. *See In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 158-59 (4th Cir. 1991); *In re Microstrategy, Inc., Sec. Litig.*, 148 F.Supp.2d 654m 663 (E.D. Va. 2001); *see also Ehrheart v. Verizon Wireless,* 609 F.3d 589, 594-95 (3d Cir. 2010) (there is an "especially strong" presumption in favor of voluntary settlements "in class actions…where substantial judicial resources can be conserved by avoiding formal litigation"); Newberg §§ 11.41 ("The compromise of complex litigation can be encouraged by the courts and favored by public policy."). This includes the "strong initial presumption" in class action cases "that the compromise is fair and reasonable." *In re Microstrategy*, 148 F.Supp.2d at 663 (internal quotations omitted).

Courts in the Fourth Circuit evaluate the following factors in determining whether to approve a class action settlement: (1) whether the settlement was the product of good faith bargaining, at arm's length, and without collusion; (2) the relative strength of the Parties' cases, as well as the uncertainties of litigation on the merits, and the existence of difficulties of proof or strong defenses that the plaintiffs are likely to encounter at trial; (3) the complexity, expense, and likely duration of additional litigation; (4) the solvency of defendants and the likelihood of recovery on a litigated judgment; and (5) the degree of opposition to the settlement by class members. *In re Jiffy Lube Sec. Litig.*, 927 F.2d at 159; *see also Flinn v. FMC Corp.*, 528 F.2d 1169, 1173 (4th Cir. 1975).

First, the Court finds that this settlement was reached in good faith as a result of arm's length negotiations, without collusion. The settlement was reached after two mediations with the assistance of a qualified mediator, F. Bradford Stillman, a retired United States Magistrate Judge.

Second, wage and hour class and collective actions, such as this, are inherently complex and time-consuming. Defendants dispute liability and raise a number of defenses. The settlement amount is not the full amount that the delivery drivers could have received at trial, but the settlement eliminates the possibility that the delivery drivers might receive nothing at trial.

Third, Defendants' solvency was not at issue. Notwithstanding, the total settlement fund allotted supports approval.

Fourth, none of the class members have objected to or opted out of the settlement. These factors support approval of the settlement.

The Court therefore **APPROVES** the parties' Settlement Agreement as fair, adequate, and reasonable.

### 3.3. Fees and Expenses

#### 3.3.1. Attorney's Fees

Plaintiff's Counsel asks the Court to approve an attorneys' fees award of one-third of attorney's fees equal to one-third of the settlement fund allocated to Class Members—$736,837.29. Many courts in the Fourth Circuit have held that attorneys' fees in the amount of 1/3 of the settlement fund is reasonable. *See, e.g., Chrismon v. Meadow Greens Pizza, Inc., et al.*, No. 5:19-cv-155, 2020 WL 3790866, at \*6 (E.D.N.C. July 7, 2020) (awarding one-third of settlement fund in attorney's fees). Plaintiffs' request is 24.6% of the total settlement fund. Under the Agreement, this amount is paid *separately from* the Settlement Fund. Defendants do not object to the requested fee award. In granting preliminary approval, the Court provisionally approved Plaintiff's Counsel's request for fees and costs, and explained that the fees and costs would be

finally approved after taking into account any objections. Doc. 81, p. 4. The Notice period is closed, and no class members objected to the settlement or the requested fees and costs.

The Court finds this request for attorneys' fees to be fair, adequate, and reasonable, and therefore **GRANTS** Plaintiffs' Counsel's request for attorneys' fees in the amount of $736,837.29 in fees paid in addition to the Settlement Fund.

### 3.3.2. Expense

Plaintiffs also requests $40,150.85 in costs and expenses. These expenses include mediation costs, the mailing/emailing of the notice of collective action, the mailing/emailing/website of the settlement notice and Round 2 Subclass claim forms, and distribution of settlement funds through April 23, 2023.

The Court also **GRANTS** Plaintiffs' Counsel's request for reimbursement of litigation costs in the amount of $40,150.85, and the claims administration costs of $$40,150.85 as fair, adequate, and reasonable.

### 3.3.3. Service Awards

The Court also approves the request for a service award in the amount of $10,000 to Plaintiff Huffman. Plaintiff Huffman provided valuable insight to her Counsel throughout the case, and her efforts resulted in substantial payments to thousands of minimum wage pizza delivery drivers. The Court also approves the request for a service award in the amount of $2,500 to Plaintiff Sims. Plaintiff Sims joined this case during the Round 1 FLSA notice process, and her efforts contributed to the result obtained here.

The requested service awards is reasonable. *See, e.g., Chrismon*, 2020 WL 3790866, at *6 (approving $10,000 incentive award in pizza delivery under-reimbursement case). Accordingly,

9

Case 4:19-cv-00034-FL   Document 90   Filed 03/03/21   Page 9 of 11

the Court **GRANTS** Plaintiff Huffman's request for a service award of $10,000, and Plaintiff Sim's request for $2,500.

**4.     Conclusion**

**IT IS THEREFORE ORDERED** that the Plaintiffs' Motion for Final Approval is GRANTED. The Court ORDERS:

A. This Court has jurisdiction over the subject matter of the litigation and over all parties to this litigation, including all members of the certified settlement classes.

B. Neither the settlement, this final approval order, nor the fact of a settlement are an admission or concession by Defendants of any liability or wrongdoing whatsoever.

C. The following class is hereby certified pursuant to Rule 23 of the Federal Rules of Civil Procedure:

> All current and former delivery drivers employed from March 12, 2016 to April 30, 2020 at the Team Carolinas Domino's stores owned, operated, and/or controlled by Defendants

D.  The mater is finally certified pursuant to Section 216(b) of the FLSA.

E. The Court approves the Settlement Agreement as fair, reasonable, adequate, suffers from no obvious defects, was reached after arms' length negotiations between parties, and constitutes a reasonable compromise of a bona fide dispute of the claims and defenses in this matter, and directs the Parties to consummate its terms and provisions.

F. The Court approves of the proposed distribution of the Qualified Settlement Fund to the Class Members as described in the Settlement Agreement.

G. The Court appoints Plaintiffs Karol Huffman and Jessica Sims as the Class Representatives and approves the proposed Service Payments to Plaintiffs Karol Huffman and Jessica Sims in the amounts above.

H. The Court approves the payment of the actual costs of the Settlement Claims Administrator in the amount set forth in the Motion for Final Approval.

I. The Court approves the payment of attorneys' fees to Class Counsel and reimbursement of Class Counsel's actual costs and litigation expenses in the amounts set forth above.

J. The Court dismisses this case with prejudice in accordance with the terms of the Settlement Agreement. Without affecting the finality of this Order, this Court retains jurisdiction over the consummation, performance, administration, effectuation and enforcement of the Settlement Agreement.

**IT IS SO ORDERED**, this ___3rd___ day of March, 2021.

_____
Louise Wood Flanagan, United States District Judge